IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHERMAN OSBORN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3142 |
| | ) | |
| v. | ) | |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION IN LIMINE |
| Defendant. | ) | |
| | ) | |

    Now before me is a motion in limine filed by Defendant BNSF Railway Company (BNSF) (ECF No. 33.) The defendant seeks an order "excluding or limiting the expert witness testimony of Plaintiff's designated expert Raymond Carlson, M.D." on the issue of "whether the plaintiff was capable of returning to work as an engineer or conductor on May 3, 2007, without restrictions." (<u>Id.</u>) For the following reasons, I shall grant BNSF's motion.

### I.  BACKGROUND

    Between March 15, 2002, and August 6, 2002, Dr. Carlson treated the plaintiff, Sherman Osborn, for injuries he suffered in a motor vehicle accident on March 6, 2002. On June 7, 2002, Dr. Carlson released Osborn to return to work at BNSF. Dr. Carlson's release was not based on an examination of Osborn; instead, he issued the release based on Osborn's statement that he was feeling better. Osborn did return to work at BNSF as either an engineer or conductor, but he soon exacerbated his injuries. On June 24, 2002, Dr. Carlson restricted Osborn from duty.

    In August 2002, Dr. Carlson referred Osborn to a Dr. Ockey for treatment. Osborn was also seen by a Dr. Kaplan. Both Drs. Ockey and Kaplan examined Osborn and determined in late 2004 that Osborn would not be able to return to work as a conductor or engineer in the future.

    According to the plaintiff, Dr. Carlson next saw Osborn on May 3, 2007. (<u>See</u> Pl.'s Br. at 2, ECF No. 36.) Dr. Carlson spoke to Osborn and noted that he was "improving his life," "working out, lifting, continuing doing his physical therapy," and "motivated to go back to work." (Def.'s Ex.

12, Carlson Dep. at 56, ECF No. 35-2. See also Def.'s Index, Ex. 3, Hr'g Ex. 142 at 32, ECF No. 30-1.) He also noted that Osborn was no longer taking pain medications. (Def.'s Index, Ex. 3, Hr'g Ex. 142 at 33, ECF No. 30-1.) Dr. Carlson conducted no physical examination of Osborn, and he made no "objective observations." (Id. at 33, 38-39. See also Def.'s Ex. 12, Carlson Dep. at 56-57, ECF No. 35-2.) Also, he had not seen Dr. Kaplan's or Dr. Ockey's reports about Osborn's work restrictions, though he had heard "gossip" that Dr. Ockey restricted Osborn from returning to work. (Def.'s Ex. 12, Carlson Dep. at 47-55, ECF No. 35-2.) Based on Osborn's "self-report" and Dr. Carlson's own "subjective" observations, Dr. Carlson decided to support Osborn's attempt to return to work. (Def.'s Ex. 12, Carlson Dep. at 57-58, ECF No. 35-2; Def.'s Index, Ex. 3, Hr'g Ex. 142 at 33, ECF No. 30-1.) He therefore signed a form releasing Osborn to return to his previous position at BNSF without restrictions. He expected BNSF to perform an examination of Osborn to determine whether he was fit to return to duty, however, and he did not truly believe that BNSF would allow Osborn to return to work. (Def.'s Ex. 12, Carlson Dep. at 58-60, ECF No. 35-2; Def.'s Index, Ex. 3, Hr'g Ex. 142 at 34-35, ECF No. 30-1.) Although Dr. Carlson said that he believed with "reasonable medical certainty" that it was advisable for Osborn to attempt to return to work without restrictions, (Def.'s Index, Ex. 3, Hr'g Ex. 142 at 35, 40-41, ECF No. 30-1), he was "inwardly" concerned because Osborn struggled during his prior attempt to work and because Osborn had a "complex medical history," (id. at 34-35; see also Def.'s Ex. 12, Carlson Dep. at 59-60, ECF No. 35-2).

## II.   ANALYSIS

The defendant states, "Dr. Carlson may be a fact witness in this case because he signed a medical status form which indicated that Osborn was able to return to his position as an engineer or conductor without restrictions on May 3, 2007. Nevertheless, Dr. Carlson does not have sufficient information to testify as an expert witness as to whether Osborn was capable of returning to work as an engineer or conductor on May 3, 2007[,] without restrictions." (Def.'s Br. at 4, ECF No. 34.) I agree with the defendant. Insofar as Dr. Carlson's testimony is based solely on the information that was before him in May 2007, he cannot provide expert testimony that the plaintiff was then capable of returning to work as an engineer or conductor.

> Federal Rule of Evidence 702 states,
>
> > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, "[w]hen considering expert testimony, a district court must ensure that 'all scientific testimony is both reliable and relevant.'" Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010) (quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006)). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" Id. (quoting Marmo, 457 F.3d at 757); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." Id. (citing Marmo, 457 F.3d at 757). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." Marmo, 457 F.3d at 757. "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." Id. at 758.

Dr. Carlson interviewed Osborn on May 3, 2007, but he did not examine Osborn, and he did not have reports describing the examinations and conclusions of Drs. Kaplan and Ockey. Dr. Carlson cannot provide reliable expert testimony that Osborn was capable of returning to work based solely on his May 2007 interview with Osborn, because "sufficient facts" or data to support such testimony are lacking. See Marmo, 457 F.3d 758.

Quoting Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001), the plaintiff argues, "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." (See Pl.'s Br. at 4, ECF No. 36.) He adds, "Mr. Osborn is not offering Dr. Carlson's opinions to prove that Mr. Osborn was unequivocally capable of returning to work on May 3, 2007. Instead Dr. Carlson's testimony is

3

being offered to show that based on subjective findings of Mr. Osborn's condition, Dr. Carlson felt to a reasonable degree of medical certainty that Mr. Osborn should be able to begin the process of trying to return to work." (Pl.'s Br. at 4.) It seems to me, however, that even if Dr. Carlson were limited to testifying as the plaintiff suggests, his opinion that Osborn was "able to begin the process of trying to return to work" is so lacking in medical support that it offers no assistance to the jury.

I note in passing that I confused the names of Dr. Carlson and Dr. Clark on page 18 of my memorandum on the defendant's motion for summary judgment. (ECF No. 54.) Sentences appearing in the last paragraph on that page should read, "Significantly, Dr. Clark also stated . . . ." and "It seems to me that a reasonable factfinder could conclude, based on Roper's functional capacity evaluation and Dr. Clark's testimony . . . ." Because the opening sentence of that paragraph indicates that I was "[s]etting aside" the form completed by Dr. Carlson in May 2007, it is likely that the parties readily identified my mistake. Nevertheless, that portion of the memorandum ought to be corrected.

**IT IS ORDERED** that the defendant's "Motion in Limine to Exclude the Expert Testimony of Raymond Carlson, M.D.," (ECF No. 33), is granted.

Dated April 12, 2011.

        BY THE COURT

        s/ Warren K. Urbom
        United States Senior District Judge